**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 14-CR-95-LRR |
| vs. | **ORDER** |
| RANDY BELTRAMEA, | |
| Defendant. | |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . *1*

*III. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.   Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B.   Application* . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *1.   Communication of the government's warning* . . . . . . . . . . . *4*
        *2.   Creation of forfeiture agreement* . . . . . . . . . . . . . . . . *5*
        *3.   Communication about transactions and mortgage* . . . . . . . . *10*

*IV.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

*I.  INTRODUCTION*

The matter before the court is the Federal Public Defender's "Motion to Quash Subpoena" ("Motion") (docket no. 52).

*II.  RELEVANT PROCEDURAL HISTORY*

On October 31, 2013, the court accepted Defendant's guilty plea to Counts 1-4, 7, 8, 12 and 16 of the Second Superseding Indictment in *United States v. Randy Beltramea*, 13-CR-20-LRR (N.D. Iowa). On March 13, 2014, Defendant appeared before the court for sentencing in that case. The sentencing hearing was continued and eventually

concluded on April 4, 2014.  During those proceedings, Defendant was represented by attorney Terence McAtee of the Federal Public Defender.

On November 19, 2014, the grand jury returned a Superseding Indictment (docket no. 15) against Defendant.  The Superseding Indictment charged Defendant with four counts of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2).  On February 6, 2015, Defendant pled guilty to all four counts of the Superseding Indictment, and, on February 23, 2015, the court accepted Defendant's pleas.  *See* February 23, 2015 Order (docket no. 34).  On April 30, 2015, the government filed "Government's Sentencing Memorandum" (docket no. 41), which expressed the government's intention to call McAtee as a witness at Defendant's sentencing hearing.

On June 26, 2015, the Federal Public Defender filed the Motion, which challenged the government's intended use of McAtee as a witness.  On that same date, the government filed a "Supplemental Sentencing Memorandum" (docket no. 53) resisting the Motion.  On July 13, 2015, Defendant filed a "Supplemental Sentencing Brief" (docket no. 58), supporting the Motion.  On July 20, 2015, the government filed a "Response to Defendant's Supplemental Sentencing Brief" (docket no. 59), further resisting the Motion.  On July 28, 2015, the Federal Public Defender filed a "Supplemental Brief in Support of Motion to Quash Subpoena" (docket no. 64).  The Motion is fully submitted and ready for decision.

### *III.  ANALYSIS*

The Federal Public Defender seeks to prevent the government from questioning McAtee "about matters which are protected by the attorney-client privilege."  Motion at 2.  The government argues that the attorney-client privilege does not protect the questions it intends to ask McAtee.

## A. *Applicable Law*

"Attorney-client communications and attorney work product are privileged and are not ordinarily discoverable . . . ." *In re Green Grand Jury Proceedings*, 492 F.3d 976, 979 (8th Cir. 2007). "The party asserting the privilege . . . bears the burden of establishing its essential elements." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).

"[C]onfidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977). Therefore, "where legal advice of any kind is sought from a . . . legal advisor in his capacity as such, the communications . . . made in confidence by the client, are at his instance permanently protected from disclosure . . . except [if] the protection be waived." *Id.* at 602 (quoting *Wonneman v. Stratford Sec. Co.*, 23 F.R.D. 281, 285 (S.D.N.Y. 1959)) (internal quotation marks omitted). "While the privilege, where it exists, is absolute, the adverse effect of its application on the disclosure of truth may be such that the privilege is strictly construed." *Id.*

One exception to the privilege is the crime-fraud exception. "Under the crime-fraud exception, attorney-client privilege does not extend to communications made for the purpose of getting advice for the commission of a fraud or a crime." *In re Green Grand Jury Proceedings*, 492 F.3d at 979 (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989)) (internal quotation marks omitted). Therefore, "[a]ttorney-client communications lose their privileged character when the lawyer is consulted not with respect to past wrongdoings but rather to further a continuing or contemplated criminal fraud or scheme." *Id.* (quoting *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998)) (internal quotation marks omitted) (alteration in original).

A party may also waive the attorney-client privilege. "A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged

communication at issue." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000). This at-issue waiver generally arises "when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense." *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)) (internal quotation marks omitted) (alteration in original). In addition to at-issue waiver, "[v]oluntary disclosure of attorney client communications expressly waives the privilege." *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998). "[C]ourts typically apply . . . a waiver to all communications on the same subject matter." *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999).

### B. Application

The government intends to elicit testimony on the following topics from McAtee: (1) whether McAtee communicated to Defendant a warning from the government "about [D]efendant's unlawful conduct in soliciting $4,000 from G.W. for the purchase of Lot 4 at a time that [D]efendant knew Lot 4 was subject to a forfeiture proceeding"; (2) information about a "meeting at the United States Attorney's Office and whether [D]efendant authorized . . . McAtee to sign and file the preliminary order of forfeiture"; and (3) details of McAtee's communications with Defendant "about the transactions with G.W., S.C., and I.W., and the mortgage that was placed on the rest of the development." *See* Supplemental Sentencing Memorandum at 10-11.

#### 1. *Communication of the government's warning*

The government intends to ask McAtee about a conversation wherein the government told McAtee that Defendant's actions soliciting payment for a lot subject to forfeiture was illegal. The government further "intends to ask Mr. McAtee if he conveyed the warning to his client." *Id.* at 10. Defendant argues that whether McAtee conveyed

4

the warning to Defendant is protected by the attorney-client privilege because "it contained legal advice; i.e., that transacting in forfeited property could result in criminal charges." Supplemental Sentencing Brief at 4.

The court finds that the government may elicit testimony from McAtee about whether he communicated the government's warning to Defendant. Defendant is correct that an attorney's communications to a client are protected if "they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). Here, though, merely communicating the government's warning that Defendant's conduct was illegal does not constitute legal advice. At most, it is legal advice from the government. McAtee might have disagreed with the government's conclusion and advised Defendant that his conduct was not in fact illegal, or he might have expressed his agreement with the government about Defendant's conduct being illegal—such communications *would* constitute legal advice. However, the bare relay of the government's warning, without advice or commentary, is not protected by the attorney-client privilege. Accordingly, the court shall deny the Motion and permit the government to elicit testimony from McAtee about whether he communicated the government's warning to Defendant.

### 2. *Creation of forfeiture agreement*

"The government intends to ask Mr. McAtee to testify about the meeting at the United States Attorney's Office and whether defendant authorized Mr. McAtee to sign and file the preliminary order of forfeiture." Supplemental Sentencing Memorandum at 10. Defendant "agrees that the statements made by him at the meeting are not protected by the [attorney-client] privilege." Supplemental Sentencing Brief at 5. Accordingly, the court shall deny the Motion and permit the government to elicit testimony from McAtee concerning statements made during the meeting at the United States Attorney's office.

Regarding whether Defendant authorized McAtee to sign the preliminary order of forfeiture on his behalf, Defendant concedes in his brief that he "does not contest that he authorized Mr. McAtee to sign the preliminary order" and recognizes that "if [Defendant] were challenging Mr. McAtee's performance in any relevant way, such would waive the privilege." *Id.* The government acknowledges that whether Defendant authorized McAtee to sign the forfeiture order "would normally be privileged," Supplemental Sentencing Memorandum at 11, but argues that Defendant waived the privilege by raising the issue in his objections to the Presentence Investigation Report ("PSIR") and in his appeal of the prior criminal matter. Government's Response at 5. The government further contends that, due to Defendant's shifting position on McAtee's authority to sign the forfeiture order, "it is necessary to have Mr. McAtee establish this fact" once and for all. *Id.*

As an initial matter, the court finds that Defendant has not placed McAtee's authority to sign the forfeiture order at issue in the present proceeding. Defendant unequivocally states that he does not contest that he gave McAtee permission to sign the preliminary forfeiture order. The government expresses a desire to question McAtee on the issue based on its speculation that Defendant will change his mind and raise the issue in the future. However well-founded the government's concerns are, the privilege protects attorney-client communications until Defendant actually places the communication at issue, otherwise waives the privilege or the communication fits within a recognized exception. The government provides no authority permitting such a preemptive waiver of privilege and the court is unaware of any. The government's concern that Defendant will contest McAtee's authority despite his representations to the contrary is therefore premature. If Defendant ultimately does contest that he authorized the preliminary order of forfeiture, then he will have waived the privilege, and, at that point, the government can seek testimony from McAtee—as Defendant himself concedes.

The government also argues that Defendant previously waived the privilege in his objections to the PSIR and in his appeal to the Eighth Circuit in the prior criminal case. Defendant's objections to the PSIR state, in relevant part: "[t]he 'agreement' [drafted after the meeting at the U.S. Attorney's office] . . . was signed by the prosecuting attorney, not Defendant or [McAtee]," and "[t]he preliminary order of forfeiture . . . was signed by [McAtee], not Defendant." Defendant's Objections to PSIR at 1 (docket no. 38). These objections correspond to portions of the PSIR indicating that Defendant "reached an agreement" to participate in liquidation of the forfeited property and "agreed to the entry of the preliminary order of forfeiture." PSIR (docket no. 39) ¶¶ 13-14. While the objections can be read as a minimization of Defendant's personal role in reaching the agreements, they go no further than stating a verifiable fact: Defendant did not personally sign either of the two documents that led to the preliminary order of forfeiture. *See* Government's Exhibit 1 (docket no. 42) at 3 (showing only the signatures of the prosecuting attorney, not Defendant or McAtee, on the proposed agreement drafted by the government); Preliminary Order of Forfeiture at 5, *Beltramea*, 13-CR-20-LRR (docket no. 88) (showing McAtee and the prosecuting attorney's signatures, but not Defendant's). The government interprets the objections as contesting Defendant's authorization of McAtee's actions. While this is a reasonable interpretation based solely on the objections, it is not borne out by any of Defendant's actual sentencing arguments. On the contrary, as noted above, Defendant explicitly disclaims any contest of McAtee's authority to enter the forfeiture agreement on his behalf. "A mere indication of a claim or defense certainly is insufficient" to waive attorney-client privilege. *In re County of Erie*, 546 F.3d at 229. Instead, for a privileged communication to be at issue, "a party must *rely* on privileged [communications with] his counsel to make his claim or defense." *Id*. Accordingly, although Defendant could have chosen to argue McAtee's authority to sign the preliminary

order of forfeiture based on the facts stated in his objections, the mere availability of that claim did not waive the attorney-client privilege.[1]

Likewise, Defendant's appellate brief to the Eighth Circuit does not place McAtee's authority to enter the forfeiture agreement sufficiently at issue to waive the privilege. In the brief's statement of the facts, Defendant stated: "[a]lthough signed by Terry McAtee as attorney for Defendant as 'Approved as to form and content,' it was not signed by Mr. Beltramea. There is nothing in the record indicating that Mr. Beltramea personally saw or approved the Preliminary Order of Forfeiture." Brief and Addendum of Defendant-Appellant Randy Beltramea ("Brief") at 16, *United States v. Beltramea*, 785 F.3d 287 (8th

---

[1] The court's forfeiture order adopted the agreement that Defendant, through McAtee, and the United States Attorney reached following a meeting at the United States Attorney's Office. *See* Preliminary Order of Forfeiture, *Beltramea*, 13-CR-20-LRR (docket no. 88) (entered December 11, 2013) ; *see also* Motion for Preliminary Order of Forfeiture, *Beltramea*, 13-CR-20-LRR (docket no. 87) (filed December 11, 2013); Government's Exhibit 1 (docket no. 42) (reflecting the parties' agreement as of November 20, 2013). It is unclear from the briefing whether the government plans to ask McAtee about Defendant's understanding of the forfeiture order as part of its intended questioning on his authority to enter the agreement. To the extent the government expressed an intention to ask specifically about Defendant's understanding of the forfeiture order, the court notes that a separate objection to the PSIR places his understanding directly at issue and waives the privilege on the matter. In Defendant's objection to paragraph 38 of the PSIR, he states that "the corporation had the legal right to sell the real estate while it was subject to forfeiture, even though [he] did not." PSIR ¶ 38. The objection corresponds to the application of USSG §2J1.2(b)(3), which provides for a two-level increase to Defendant's offense level if the offense "was otherwise extensive in scope, planning, or preparation." *Id*. The two-level increase was assessed by the Probation Office and was not, therefore, raised by the government. By claiming that his offense was not extensive in scope because he understood the forfeiture order to permit his corporation to act where he personally could not, Defendant places his understanding of the forfeiture order at issue. Thus, although the court ultimately concludes that the government may not question McAtee about whether Defendant authorized him to sign the forfeiture order, the government may question McAtee more narrowly about indications of Defendant's understanding of the order.

8

Cir. 2015) (No. 14-1899). Also, in the brief's standard of review for the forfeiture issue raised on appeal, Defendant stated in a footnote: "there is nothing in the record demonstrating that Mr. Beltramea ever saw or agreed to the Preliminary Order. Although the Preliminary Order references 'the consent of the defendant as indicated by his signature herein,' . . . Mr. Beltramea's signature does not appear on the Preliminary Order." *Id.* at 26 n.7. Like the objections to the PSIR, Defendant lays a factual foundation that might support an argument that McAtee lacked authority to enter the forfeiture agreement. But, once again, while he points out that there is "nothing on the record" to establish that he "saw or agreed to the Preliminary Order," *id.*, Defendant never used those facts to actually claim on direct appeal that McAtee lacked authority to act on Defendant's behalf. Defendant did not claim that the preliminary order was rendered invalid because McAtee entered it without authority. Instead, Defendant claimed that the preliminary order was invalid because it applied forfeiture to claims beyond those alleged in the Second Superseding Indictment and in excess of the proven nexus between forfeited property and criminal activity. *See id.* at 26-27. Defendant's brief mention that the record lacks proof of his personal involvement with the forfeiture order appears to serve the sole purpose of anticipating and refuting the government's assertion that Defendant's consent to the order nullified its deficiencies. This apparent purpose finds support from the fact that Defendant mentions his lack of personal involvement only in passing in his initial brief—in the statement of facts and in a footnote preceding his substantive arguments—and from the fact that the government did ultimately rely almost exclusively on Defendant's consent to the forfeiture order. *See* Brief of Appellee at 40-44, *Beltramea*, 785 F.3d 287 (No. 14-1899). Defendant does discuss McAtee's authority in more detail in his appellate reply brief, but he does so only in the context of answering the government's charge that Defendant's consent must defeat the validity of his appeal. Reply Brief Defendant-Appellant Randy Beltramea at 13-21, *Beltramea*, 785 F.3d 287 (No. 14-1899). Notably, even while

9

countering the government's claim of consent, Defendant never argues that he did not in fact authorize the forfeiture agreement, but instead emphasizes that "there was no examination of Mr. Beltramea [at any time] to determine if he had knowingly and voluntarily agreed to forfeiture," which the government's arguments had simply assumed. *Id.* at 17. In short, the interplay between the appellate briefs reveals that Defendant did not raise the issue of McAtee's authority as part of his claim for appellate relief. Instead, by arguing that Defendant consented to the errors that he alleged on appeal, the government raised the issue in its defense to Defendant's claims. A party does not waive the attorney-client privilege where the opposing party first raises the issue that allegedly waives the privilege. *See Rock River Commc'ns, Inc. v. Universal Music Grp.*, 745 F.3d 343, 353 (9th Cir. 2013) (holding that a party must "affirmatively place[] its attorney-client communications at issue" to waive the privilege and an opposing party's placement of attorney-client communications at issue will not result in waiver). Accordingly, Defendant did not waive the privilege simply by refuting the government's defense.

In light of the above discussion, the court shall grant the motion to the extent that it argues the government cannot elicit testimony from McAtee about whether Defendant authorized the forfeiture order. However, in the event Defendant argues that McAtee lacked authority, despite his representations in his brief, he will be deemed to have waived the privilege and the government will be permitted to question McAtee on the issue.

### 3. *Communication about transactions and mortgage*

The government seeks to question McAtee about "what [D]efendant told him, and did not tell him, about the transactions with G.W., S.C., and I.W., and the mortgage that was placed on the rest of the development." Supplemental Sentencing Memorandum at 11. The government concedes that the attorney-client privilege applies, but it argues that the crime-fraud exception applies and that Defendant waived the privilege. Defendant argues that the crime-fraud exception does not apply because "the [g]overnment does not complain

that [Defendant] was engaged in illegal or fraudulent activity when he was represented by Mr. McAtee, but in breach of contract." Supplemental Sentencing Brief at 10. Defendant further contends that he did not waive the attorney-client privilege because Defendant did not put the communication at issue and because McAtee was required to respond to the court's questions, making any disclosure of privileged information involuntary. *See id.* at 8-9.

The court finds that Defendant waived the attorney-client privilege with respect to the transactions with G.W., S.C., and I.W. and the mortgage placed on the rest of the development. At the sentencing hearing on March 13, 2014, McAtee argued that Defendant should be granted a sentence reduction for acceptance of responsibility. During a line of inquiry on the issue, the court asked about Defendant's compliance with the forfeiture order and the steps Defendant took to pay restitution. In response, McAtee made representations about Defendant's compliance with the forfeiture order:

> MR. McATEE: . . . I've never seen this extent of a forfeiture on a fraud case . . . . He's agreed to all of this, Your Honor. This is extraordinary acceptance of responsibility. . . .
>
> THE COURT: What has he done?
>
> MR. McATEE: He's agreed to the forfeiture, Your Honor. He's—it's always been his position that if he could sell some of these lots, the victims would be paid back and that's why we entered this [forfeiture] agreement. . . .
>
> THE COURT: . . . [The government] says that in return for the lifting of the lis pendens, which would tie up the property and keep somebody from giving marketable title, that your client agreed to go out and find an independent realtor; get these listed; give the buyers' names to the United States so they could check them out. . . . [W]hat's the name of the broker he hired to do this? . . .

> MR. McATEE: He didn't have a broker. . . . He was hoping to set up an escrow account to sell these properties; hold them in an escrow account. The [g]overnment agreed to that extent.
>
> . . .
>
> THE COURT: . . . [A]s I understand the [forfeiture] agreement . . . it was his obligation to use a broker, first of all, but when questioned by the United States Attorney's Office who are these buyers, [Defendant] was unable to come up with names. So what are the names of these people?
>
> MR. McATEE: [Defendant] advises me Lot No. 4 was . . . Gary Wade. . . . He advises me that the purchase price was going to be $67,300 including the—Lot No.6, Ryan Steen, $60,000.

Official Transcripts of Sentencing Proceedings (Vol. I) at 32-33, *Beltramea*, 13-CR-20-LRR (docket no. 141). This exchange disclosed details of Defendant's compliance with the forfeiture agreement and pending transactions of Defendant's property subject to forfeiture. The disclosure occurred in open court in the presence of third parties and, accordingly, Defendant waived the privilege.

Defendant argues he did not waive the privilege through voluntary disclosure because "McAtee was, as an officer of the Court, required to respond" to the court's inquiries. Supplemental Sentencing Brief at 9. While lawyers are indeed officers of the court, a court's mere inquiry into a matter does not compel disclosure of confidential information. *Cf.* Iowa Rules of Prof'l Conduct R. 32:1.6(a) (providing that "[a] lawyer shall not reveal information relating to the representation of a client" unless revealing the information is impliedly authorized, the client gives informed consent or an exception applies). On the other hand, where a court *orders* disclosure of confidential information, including privileged communications, the lawyer's duty to the court will trump the duty of confidentiality. *Compare id.* at 32:1.6(b)(6) (permitting a lawyer to divulge confidential

information "to comply with . . . a court order), *with id.* at 32:3.3(c) (commanding that duties to the court "apply even if compliance requires disclosure of information otherwise protected by [the rule of confidentiality]"); *see also Jepsen v. Fla. Bd. of Regents*, 610 F.2d 1379, 1384 (5th Cir. 1980) (holding that "[a] district court clearly has the power to order production of" information protected by a confidentiality statute). Absent a court order, however, a lawyer's duty to the court demands only that when a lawyer responds to a court's inquiry, the response provided must not knowingly be false. *See, e.g.*, Iowa Rules of Prof'l Conduct R. 32:3.3 (providing the ethical duties for "[c]andor toward the tribunal").

The exchange between the court and Defendant at the March 2014 sentencing hearing was not a court order. If McAtee or Defendant wished to assert the attorney-client privilege in response to the court's inquiry, they could have done so without running afoul of McAtee's duty to the court, so long as McAtee made no corresponding false statements. In short, Defendant is correct that the court's inquiry apparently led to the disclosure of privileged communications. However, an inquiry in open court is not a court order and does not compel or render involuntary Defendant's waiver of the attorney-client privilege.

Because Defendant voluntarily waived the privilege at the March 2014 sentencing hearing, he waived the privilege for the government's present purposes. As Defendant points out, "[a]lmost every attorney's primary source of knowledge about a case is his or her client." Supplemental Sentencing Brief at 9. It necessarily follows that information acquired from attorney-client communications is routinely disclosed during a lawyer's pursuit of a favorable outcome for his or her client. Disclosure of privileged information for a favorable purpose does not violate the duty of confidentiality, but nevertheless waives the privilege. *See* Iowa Rules of Prof'l Conduct R. 32:1.6(a) ("A lawyer shall not reveal [confidential] information . . . unless . . . the disclosure is impliedly authorized to carry out the representation."); *see also United States v. Tyerman*, 701 F.3d 552, 559 (8th Cir.

13

2012) (finding that information disclosed to aid in a plea negotiation is "implicitly authorized" by a client and "waive[s] the attorney-client privilege"). In the present case, McAtee's disclosures about Defendant's compliance with the forfeiture agreement arose during a lengthy exchange about a potential sentencing reduction for acceptance of responsibility sought by Defendant. In that context, McAtee made the disclosures in the understandable pursuit of a favorable sentencing outcome for Defendant. But in waiving the privilege for the potentially favorable purpose, McAtee and Defendant waived the privilege for all purposes. *See Davis*, 583 F.3d at 1090 (stating that a party "cannot use attorney-client privilege as both a shield and a sword") (quoting *Workman*, 138 F.3d at 1264). So, by waiving the privilege as a "sword" used to seek a sentencing reduction, Defendant forfeited the ability to raise the privilege as a "shield" against the government's use in the present proceeding.

Given the court's conclusion that Defendant voluntarily waived the privilege by disclosing privileged information at the March 2014 sentencing hearing and that the waiver at the hearing constitutes a waiver for the government's present purposes, the last remaining consideration is whether the waiver applies to the information sought by the government. "[C]ourts typically apply . . . a waiver to all communications on the same subject matter." *PaineWebber*, 187 F.3d at 992. At the March 2014 sentencing hearing, McAtee disclosed information about Defendant's attempts to comply with the forfeiture order by seeking an attorney to place the property in escrow and by personally soliciting buyers of the property. *See* Official Transcripts of Sentencing Poceedings (Vol. I) at 32-33, *Beltramea*, 13-CR-20-LRR (docket no. 141). The government plans to question McAtee about real estate "transactions with G.W., S.C., and I.W., and the mortgage that was placed on the rest of the development." Supplemental Sentencing Memorandum at 11. The forfeiture order was entered to "permit [D]efendant . . . to participate in the sale of his real property" for purposes of "maximiz[ing] the amount of money recovered" and

"providing restitution to the victims of [D]efendant's criminal conduct." Government's Exhibit 1 (docket no. 42) at 1. Information about Defendant's transactions with potential buyers and the mortgage placed on the development clearly implicates his compliance with the forfeiture order. The transactions point to whether Defendant indeed maximized the value of the property within the parameters outlined in the forfeiture order, and the mortgage reflects Defendant's apparent avoidance of his duties as defined in the agreement. Because Defendant's disclosures at the March 2014 sentencing hearing and the information sought by the government relate to Defendant's compliance with the forfeiture order, the court finds that they encompass the same subject matter. Therefore, Defendant waived the privilege for both matters the government seeks to question McAtee about.

Because the court finds that Defendant and McAtee waived the attorney-client privilege by disclosing privileged communications at the March 2014 sentencing hearing, the court need not decide whether Defendant waived the privilege by putting it at issue or whether the crime-fraud exception applies. Accordingly, the court shall deny the Motion and permit the government to question McAtee about communications between McAtee and Defendant concerning the transactions with G.W., S.C. and I.W., and the mortgage placed on the property.

## IV. CONCLUSION

In light of the foregoing, the Federal Public Defender's "Motion to Quash Subpoena" (docket no. 52) is **DENIED IN PART AND GRANTED IN PART** as follows:

(1) **DENIED** as to McAtee's delivery of the government's warning to defendant;

(2) **GRANTED** as to McAtee's authority to enter the forfeiture agreement on Defendant's behalf; and

(3) **DENIED** as to McAtee's conversations about Defendant's transactions with G.W., S.C., and I.W., and the mortgage placed on the development.

**IT IS SO ORDERED.**

**DATED** this 11th day of September, 2015.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA